**UNITED STATES of America, Plaintiff–Appellee,**

v.

**William Phillip CUFF, Defendant– Appellant.**

**No. 92–30475.**

United States Court of Appeals, Ninth Circuit.

Submitted June 8, 1993 **.

Decided July 22, 1993.

---

** The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App.P. 34(a); 9th Cir.R. 34–4.

**1397**

John F. Deits, Asst. U.S. Atty., Portland, OR, for plaintiff-appellee.

Ellen C. Pitcher, Asst. Federal Public Defender, Portland, OR, for defendant-appellant.

Before: CANBY, FERNANDEZ and T.G. NELSON, Circuit Judges.

PER CURIAM:

William P. Cuff, Jr. appeals his sentence imposed under the United States Sentencing Guidelines following a plea of guilty to theft of mail by a postal employee in violation of 18 U.S.C. § 1709. Cuff contends that the district court erred by adjusting his base offense level upward pursuant to Guidelines § 3B1.3 for abuse of trust. We have jurisdiction under 28 U.S.C. § 1291. We vacate the sentence and remand for resentencing.

Cuff stole a mail pouch containing $164,000 of Federal Reserve Notes while he was em-

ployed by the Postal Service to unload mail at a post office loading dock. He contends that an upward adjustment of his sentence for abuse of trust is not appropriate because he was not in "a position of public or private trust" within the meaning of U.S.S.G. § 3B1.3. We agree.[1]

The Sentencing Guidelines provide for a two-level enhancement if the defendant has "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. "The position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons. This adjustment, for example, would not apply to an ordinary bank teller." § 3B1.3, comment. (n. 1).

■ In determining whether a person is in a position of trust, we have said that the critical inquiry is "the extent to which the position provides the freedom to commit a difficult-to-detect wrong." *Hill*, 915 F.2d at 506. If one party to the employment relationship is able to take advantage of that relationship to commit a criminal act that will not be readily noticed, that person occupies a position of trust, but if any attempt to abuse the employment relationship is readily noticed by the other party to the relationship, the relationship is not one of trust. *Id.*

Thus, a credit union manager who used her position to embezzle funds and to conceal the theft for an extended period of time, *United States v. Christiansen*, 958 F.2d 285, 288 (9th Cir.1992), a United States Marshall who used his contacts at the Marshall's Service to obtain information about an individual for the purpose of extortion and blackmail, *United States v. Pascucci*, 943 F.2d 1032, 1037 (9th Cir.1991), and a police officer who used her position to attempt to deflect investigation of her drug trafficking activities, *United States v. Foreman*, 926 F.2d 792, 795–97 (9th Cir.1990), abused positions of trust. We have also held that a postal carri-

---

1. We review de novo the district court's application of the abuse of trust enhancement. *United*

*States v. Hill*, 915 F.2d 502, 505 (9th Cir.1990).

**1398**

er who delivers ordinary mail is in a position of trust because the carrier is not under constant surveillance and does not account for individual pieces of unregistered mail, *United States v. Ajiboye,* 961 F.2d 892, 895 (9th Cir.1992), and that an employee truck driver who transports furniture and household goods for families who are relocating may be in a position of trust. *Hill,* 915 F.2d at 506–07.

If we are to make sense out of the Guideline and its commentary, however, we cannot permit the focus on difficulty of detection to convert the position of every person who handles property into one of trust. Nor can we assume that the position of every such person "significantly facilitated the commission or concealment of the offense," within the meaning of § 3B1.3. After all, the commentary does exclude "embezzlement by an ordinary bank teller" from enhancement under the section. U.S.S.G. § 3B1.3, comment. (n. 1). The reason is that "[t]he position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons." *Id.* Moreover, the theory behind the enhancement is that persons who abuse their positions of trust "generally are viewed as more culpable." *Id.* (backg'd).

█ In light of these principles, we fail to see any significant distinction between the bank teller who embezzles funds and Cuff, who stole mail packages while employed in unloading them and moving them into the workroom where other employees were located. No principle of the Guideline or its commentary suggests why Cuff is "more culpable" than the teller. Nor does our precedent compel any such conclusion. Cuff was not out on his own, entrusted with sole direction of himself and his mail, like the letter carrier in *Ajiboye,* 961 F.2d at 895. Much of the time that Cuff worked, he was with others. Although he was not under constant observation on the loading dock, and was permitted to load and to unload trucks by himself, postal inspectors can observe mail handlers at work on the dock from catwalks with concealed surveillance areas, and mirrors are placed in the work area to facilitate

observation. These are not the trappings of a position of trust. *See Hill,* 915 F.2d at 506 (factor negating position of trust is "ease with which the trustee's activities can be observed").

█ Nor can it be said that Cuff was in a position to commit a crime that would not be readily discovered. The mere fact that he was not caught red-handed is not enough to convert his crime into an abuse of trust. The mail that Cuff stole was registered, and the theft was discovered within a day. The Postal Service quickly ascertained the date and time the missing mail arrived at the dock, when it had been unloaded, and who had been working on the dock at that time. On the strength of this information, and further information obtained from Cuff's supervisor, who had observed Cuff on the day of the theft, the Postal Service obtained a search warrant to search Cuff's home five days after the theft occurred. Although it was months more before the case against Cuff was sufficiently certain to present for indictment, the course of events do not suggest that Cuff's position was one of trust, the abuse of which "significantly facilitated the commission or concealment of the offense." § 3B1.3. We said in *Hill* that "if one party is able to take criminal advantage of the relationship *without fear of ready or quick notice* by the second party, the second party has placed a level of trust in the first." *Hill,* 915 F.2d at 506 (emphasis added). The notice here was ready and quick enough.

Cuff's position was not significantly different from that of millions of workers who handle property. We conclude that the district court erred in adjusting Cuff's sentence upward two levels for abuse of a position of trust, pursuant to § 3B1.3. The sentence is VACATED and the matter is REMANDED for resentencing.