UNITED STATES of America

v.

Sheila K. SMAW, Appellant.

No. 93–3193.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 24, 1994.

Decided May 13, 1994.

A.J. Kramer, Federal Public Defender, argued the cause, for appellant. With him on the briefs, was James R. Holloway, Asst. Federal Public Defender.

Barbara A. Grewe, Asst. U.S. Atty., argued the cause, for appellee. With her on the brief, were Eric H. Holder, Jr., U.S. Atty., and John R. Fisher and Blanche L. Bruce, Asst. U.S. Attys.

Before MIKVA, Chief Judge; WILLIAMS and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

In *United States v. Smaw*, 993 F.2d 902 (D.C.Cir.1993), we vacated the original sentence of Sheila K. Smaw for violation of 18 U.S.C. §§ 1029 & 1341, and remanded for determination of whether her sentence had properly been enhanced for "abuse of position of trust" under § 3B1.3 of the United States Sentencing Guidelines ("U.S.S.G."). The District Court determined that it could so enhance the sentence, and resentenced her with the enhancement. Smaw again appealed. Based on an amendment to the guideline commentary issued subsequent to our prior remand order, we conclude that Smaw did not occupy a position of trust within the meaning of the guidelines. Consequently, we vacate and remand for resentencing without the enhancement.

## I.  BACKGROUND

Sheila Smaw, a GS–7 "time and attendance" clerk at the Federal Trade Commission ("FTC"), initiated a scheme to obtain credit cards fraudulently. Smaw applied for credit cards using the actual names and personal data of fellow employees at the FTC, to which her position gave her access. She had the credit cards sent to various Washington mailing addresses, but provided a single FTC telephone number over which she had exclusive control via a voice mail access code. Eventually, Smaw obtained over 30 credit cards with which she made approximately $50,000 in purchases and cash advances. After her scheme was detected and she was indicted by a District of Columbia grand jury, Smaw pleaded guilty to credit card fraud and mail fraud, in violation of 18 U.S.C. §§ 1029 & 1341 respectively. At sentencing, because the court believed that Smaw abused a position of public trust by using co-workers' social security numbers and birthdates she obtained from payroll documents, it enhanced the base offense by two levels pursuant to U.S.S.G. § 3B1.3—"[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." U.S.S.G. § 3B1.3 (1993). The court sentenced Smaw to two consecutive 18–month terms, later modified to concurrent 30–month terms.

Smaw appealed to this Court, arguing that she did not occupy a position of trust within the meaning of the guidelines. We vacated Smaw's sentence and remanded for further fact finding to determine whether an " 'abuse of trust' enhancement [was] appropriate." 993 F.2d at 903. After an October 8, 1993 hearing, at which the court took further evidence on the position-of-trust issue and heard argument based on amended commentary to two sentencing guidelines, the court reached the same conclusion as before and reinstated the original sentence.

## II.  ANALYSIS

■ The language of the applicable sentencing guideline has remained constant throughout this litigation. "If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." U.S.S.G. § 3B1.3. However, the United States Sentencing Commission amended the commentary to that section effective November 1, 1993. Obviously, at the time of our original decision, the amended commentary was not yet effective. At that time, we noted that "[n]either the Guidelines nor the accompanying commentary offers a definition of 'a position of trust.'" 993 F.2d at 905. Noting that the term did not "suggest a classic fiduciary relationship," we consulted the then-available commentary, which only stated that

> [t]he position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily been afforded to other persons. *This adjustment, for example, would not apply to embezzlement by an ordinary bank teller.*

U.S.S.G. § 3B1.3, Application Note 1 (quoted and emphasis added in *Smaw,* 993 F.2d at 905).

With that limited guidance, we rejected the government's argument that an employee's mere access to information about her fellow employees was adequate to place her in a position of public trust and determined that "if it could be shown that defendant gained the information she exploited by virtue of her specific job," that showing would be sufficient to bring her within the guideline. *Id.* at 906.

The district court on remand, although attempting to follow our instructions, noted that the Commission had issued an amendment to the commentary accompanying the relevant guideline to become effective the month after the resentencing hearing. The new version of note 1 of the commentary to § 3B1.3 reads as follows:

> "Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (*i.e.,* substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily nondiscretionary in nature. For this enhancement to apply, the position of trust must have contributed in some significant way to facilitating the commission or concealment of the offense (*e.g.,* by making the detection of the offense or the defendant's responsibility for the offense more difficult). This adjustment, for example, would apply in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. This adjustment would not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above-described factors.
>
> Notwithstanding the preceding paragraph, because of the special nature of the United States mail an adjustment for an abuse of a position of trust will apply to any employee of the U.S. Postal Service who engages in the theft or destruction of undelivered United States mail.

U.S.S.G. § 3B1.3, Application Note 1 (amended effective Nov. 1, 1993).

The sentencing judge took evidence as to the duties and position of Smaw and the availability to others of the information used by her in the commission of the offense. He heard argument on the then-pending amendment to the guideline commentary. He attempted to apply our instructions from the prior case and concluded that the enhancement was appropriate, but nonetheless expressly stated on the record that "the matter is not free from doubt.... It probably deserves further explication by the Court of Appeals...." He then directly advised counsel for Smaw that "I would like to see what the Court of Appeals would have to say" based on the further-developed record in the case. We agree with the district court that the matter requires further explication. This we now offer.

The Sentencing Commission's commentary in application note 1 to § 3B1.3 defining the position of trust simply does not encompass appellant's job. If we include a time and attendance clerk within the scope of positions "characterized by professional or managerial discretion" the definition becomes so boundless as to be meaningless. The two-point enhancement is a significant aspect of sentencing. To expand its defining parameters to include Smaw's position is to approach the danger perceived by the Ninth Circuit in *United States v. Cuff,* 999 F.2d 1396 (9th Cir.1993), of converting "the position of every person who handles property into one of trust." *Id.* at 1398.

The government argues that we could hold that a "trusted" time and attendance clerk should be included within the definition of a position of trust by analogy to the Postal Service employee expressly included in the "notwithstanding" paragraph of application note 1. In fact, however, that paragraph cuts against the government. The Commission in the second paragraph did not say "positions comparable to an employee of the U.S. Postal Service." Rather, the Commission referred to the "special nature of the United States mail," and expressly concluded

that a position-of-trust adjustment would "apply to any employee of the U.S. Postal Service who engages in the theft or destruction of undelivered United States mail." The Commission having clearly identified the United States mail as "special" and having introduced the provision with "[n]otwithstanding," the ancient maxim *expressio unius est exclusio alterius* applies with singular force. *See United States v. Lopez,* 938 F.2d 1293, 1297 (D.C.Cir.1991). A Commission expressly thinking about the "special nature" of the mails and describing positions related thereto as ones of trust obviously did not intend to include positions that are in some view similar.

Therefore, if we are to follow the commentary, then we must reverse the enhancement. This leaves only two questions. First, what is the force of the commentary? Second, should we apply an amended commentary having an effective date of November 1, 1993, to a sentencing of October 8, 1993?

■ The Supreme Court answered the first of these questions in *Stinson v. United States,* —— U.S. ——, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). The force of the commentary is near complete. We owe the Sentencing Commission's commentary on its own guidelines the same treatment as we afford "an agency's interpretation of its own legislative rules." *Id.* —— U.S. at ——, 113 S.Ct. at 1919. This exceeds even the deference we cede to "an agency's construction of a federal statute that it administers." *Id.* —— U.S. at ——, 113 S.Ct. at 1918. There, under the familiar *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), in the case of an ambiguity in the statute, "courts must defer to the agency's interpretation so long as it is 'a permissible construction of the statute.'" *Stinson,* —— U.S. at ——, 113 S.Ct. at 1918 (quoting *Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781–82). But in the case of the Commission's interpretation of its guidelines, "an agency's interpretation of its own regulations," so long as it "does not violate the Constitution or a federal statute, it must be given 'controlling weight unless it is plainly erroneous or inconsistent with the

regulation.'" *Stinson,* —— U.S. at ——, 113 S.Ct. at 1919 (quoting *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)). Here, the commentary is not unconstitutional, violates no statute, and is not inconsistent with the "regulation," that is, guideline. Indeed, it is a perfectly reasonable definition, albeit a different one than the one we had supposed in our prior opinion, and we are bound to follow it.

■ Finally, what is the consequence of the November 1, 1993 effective date? In our view that does not prevent us from applying the commentary to the October sentencing. It is true that the Commission has directed that except in specified exceptional cases "the court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." U.S.S.G. § 1B1.11(a). However, the Commission's commentary directs that even where an earlier edition of the guidelines manual is used, "subsequent clarifying amendments are to be considered." U.S.S.G. § 1B1.11 Application Note 1. Here, we do not have precisely the situation described in § 1B1.11 note 1, which contemplates a court using an earlier guidelines manual and applying a later manual's clarifying amendment, but we think in the case of a sentencing court employing a then-current guidelines manual, a finally adopted but not yet technically effective clarifying amendment that has been called to the attention of the sentencing court occupies the same role. Such an amendment changes nothing concerning the legal effect of the guidelines, but merely clarifies what the Commission deems the guidelines to have already meant.

The amendment to note 1 of the commentary to § 3B1.3 is just such a clarifying amendment. Amendment 492 to the United States Sentencing Commission Guidelines Manual, which adopts the new version of note 1, states: "This amendment reformulates the definition of an abuse of position of trust to better distinguish cases warranting this enhancement." As this bespeaks clarification rather than substantive alteration, we

hold that the district court should have applied the guidelines as interpreted in the November 1, 1993 commentary. That definition of position of trust does not include Smaw's position. Therefore, we order that the sentencing judgment be vacated and the case remanded for resentencing without the application of the position-of-trust enhancement.

### III.   CONCLUSION

For the reasons set forth above, the judgment of the district court is vacated and the case remanded for resentencing.